**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **HODGDON POWDER COMPANY, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 06-2100-CM** |
| ) | |
| **ALLIANT TECHSYSTEMS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### MEMORANDUM AND ORDER

Plaintiff Hodgdon Powder Company, Inc. and defendant Alliant Techsystems, Inc. are business competitors that supply gunpowder to the shooting sports industry.  Plaintiff brings this lawsuit against defendant for trademark infringement, trademark dilution, false designation of origin and unfair competition.  Plaintiff contends that defendant has infringed on the registered trademark for plaintiff's CLAYS gunpowder by introducing and marketing a new gunpowder, CLAY DOT.  The case is before the court on plaintiff's motion for a preliminary injunction (Doc. 2).  Plaintiff seeks a preliminary injunction to prevent defendant from marketing, advertising, promoting, or using any mark confusingly similar to plaintiff's registered trademark CLAYS during the pending litigation.

**I.      Background Facts**

Plaintiff introduced CLAYS to the gunpowder market in 1992 and is the registered owner of the CLAYS trademark.  Since that time, Plaintiff has extensively advertised and promoted CLAYS within the United States.  In August 2005, defendant introduced a gunpowder that directly competes with CLAYS.  Defendant named the gunpowder CLAY DOT.  Although CLAYS and CLAY DOT

have chemical and physical differences, they are comparable products. In fact, defendant's technical reloading formulations for CLAY DOT are similar, if not identical, to plaintiff's formulations for CLAYS. And, according to sports writers, the gunpowder can be used interchangeably in the "recipes" for handloading shotgun shells. At the 2005 Grand American, the world's largest shotgun competition, target shooters confused the gunpowder and tried to obtain defendant's CLAY DOT gunpowder at plaintiff's promotional booth. The products were again confused at the June 2006 Pennsylvania State Trap Shoot.

The parties dispute whether the products have similar labels. As shown below, the CLAYS product label includes a pair of orange shotgun targets superimposed on the word CLAYS. The CLAY DOT label shows an orange shotgun target superimposed on the words CLAY DOT. Each label displays the gunpowder's manufacturer at the top of the label. In the target shooting industry, the orange shot gun targets shown on the labels are referred to as "clays."




Plaintiff alleges that defendant is intentionally creating confusion between the two products in order to benefit from CLAYS's established reputation and customer base. Plaintiff further contends that it has been, and continues to be, damaged by defendant's marketing of CLAY DOT.

## II.     Standard

A preliminary injunction is an extraordinary remedy meant to preserve the status quo until a determination on the merits. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258-59 (10th Cir. 2005) (citations omitted). A party seeking a preliminary injunction must clearly and unequivocally establish each of the following:

> (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) [that] the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) [that] the injunction, if issued, will not adversely affect the public interest.

*Fed. Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999). A preliminary injunction is disfavored if it (1) alters the status quo; (2) is mandatory, as opposed to prohibitory; or (3) affords the movant all the relief that it could recover at the conclusion of a full trial on the merits. *Schrier*, 427 F.3d at 1258-59. A disfavored preliminary injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* (internal quotation and citation omitted).

## III.    Discussion

The court must closely scrutinize plaintiff's request because, if granted, the preliminary injunction would (1) alter the status quo – defendant has been selling its gunpowder under the brand name CLAY DOT for nine months; and (2) provide plaintiff with the relief it could recover after a determination on the merits – prohibiting defendant from selling its gunpowder as CLAY DOT.

**A.     Likelihood Of Success On the Merits**

The court first looks at the likelihood that plaintiff will succeed on the merits of its claims. Plaintiff has brought four claims against defendant: trademark infringement, trademark dilution, false designation of origin and unfair competition. To prevail on its claims, plaintiff must establish that defendant's CLAY DOT mark is so similar to plaintiff's CLAYS mark that the use of CLAY DOT is likely to cause consumer confusion. *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 832-33 (10th Cir. 2005) ("The key inquiry in a trademark infringement case is the likelihood of confusion between two similar marks."); *Primedia Intertec Corp. v. Tech. Mktg. Corp.*, 35 F. Supp. 2d 809, 815 (D. Kan. 1998) (recognizing that the likelihood of confusion is an essential element of both trademark infringement and unfair competition claims). When determining the likelihood of consumer confusion, the court considers the following factors:

> (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks.

*Team Tires Plus,* 394 F.3d at 832-33.

The degree of similarity is measured by the sight, sound, and meaning of the marks. *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 653 (10th Cir. 1996). As shown above, the product labels are visually distinguishable. The pronunciation of CLAYS verses CLAY DOT is also distinguishable; CLAY DOT is singular and contains an additional word. Although the common use of the word "clay" may convey a similar meaning – that the gunpowder can be used for clay target shooting – the court is not persuaded that the use of the word "clay" creates consumer confusion.

As for defendant's intent in adopting CLAY DOT, the court cannot say, on the evidence

before it, that defendant adopted CLAY DOT with the intent to pass it off as CLAYS. Defendant may be taking advantage of the similarities in the products and the product names; however, the record suggests that defendant selected the product name CLAY DOT as a continuation of its DOT gunpowder line. "Clay" represents the orange color of the dots in the gunpowder, which comports with defendant's decision to name its other gunpowder RED DOT, BLUE DOT and GREEN DOT.

When target shooters confused the products at the 2005 Grand American and the 2006 Pennsylvania State Trap Shoot, they were merely collecting a free sample or promotional item, not handloading ammunition. There is no evidence that the confused target shooters were consumers of gunpowder. The customers of CLAYS and CLAY DOT often handload their own ammunition, which requires attention to detail and precise measurements. The "recipes" used in handloading ammunition often call for a specific gunpowder and warn against substituting brands. It is unlikely that these consumers will inadvertently confuse CLAYS and CLAY DOT.

The court next considers the similarities in the use and marketing of the gunpowder and the strength of the trademarks within the market. The products are used and marketed in a similar manner, but both trademarks appear to be strong. Plaintiff has used CLAYS for fourteen years and defendant has used DOT for seventy years. The manner of marketing and strength of the trademarks do not tip the balance in favor of a preliminary injunction. After considering these factors, the court finds that there is insufficient evidence at this time to say that plaintiff will succeed on the merits of its claims.

### B. Irreparable Harm

The court now turns to whether plaintiff will suffer irreparable harm if the court denies a preliminary injunction. A harm is irreparable if money damages are an inadequate remedy because of difficulty or uncertainty in their proof or calculation. *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355,

1361 (10th Cir. 1990). "[L]oss of customers, loss of goodwill, and threats to a business' viability can constitute irreparable harm." *Zurn Constructors Inc. v. B.F. Goodrich Co.*, 685 F. Supp. 1172, 1181 (D. Kan. 1988). But, delay in seeking relief for trademark infringement undercuts the presumption of irreparable harm and "may justify denial of a preliminary injunction." *GTE Corp. v. Williams*, 731 F.2d 676, 618 (10th Cir. 1984).

Plaintiff became aware of CLAY DOT and the potential confusion between the two products in August 2005, but did not file the instant litigation until March 16, 2006. After filing its Complaint, plaintiff chose to request a waiver of service under Federal Rule of Civil Procedure 4(d) instead of promptly serving defendant, which allowed defendant additional time to answer the Complaint. Plaintiff's tardiness in instigating this lawsuit is inconsistent with its current request for immediate temporary relief. The court finds that plaintiff has not shown that it will suffer irreparable harm if the requested relief is not granted.

### C. Balance of Harms

Next, the court looks at whether the threatened injury outweighs the harm that the preliminary injunction may cause defendant. As explained above, plaintiff has not shown that it will suffer immediate and irreparable harm if a preliminary injunction is not granted. On the other hand, prohibiting defendant from continuing to sell its gunpowder as CLAY DOT will harm defendant. While plaintiff was debating whether to file this lawsuit, defendant completed its nationwide distribution of CLAY DOT. Defendant has been marketing CLAY DOT for nine months. Having to alter its CLAY DOT marketing during this litigation would cause defendant economic injury and damage its credibility in the marketplace. The court finds that the threatened injury to plaintiff does not outweigh the injury defendant would suffer if the court granted the preliminary injunction.

### D. Public Interest

Finally, the court considers whether the injunction, if issued, would adversely affect the public interest. Because plaintiff has failed to show it is likely to prevail on the merits, the court cannot say at this time that the public interest would be served by an injunction preventing defendant from using and marketing CLAY DOT.

**IV.     Conclusion**

After considering all of the relevant factors, the court finds that plaintiff has not shown that it is entitled to the extraordinary remedy of a preliminary injunction. Therefore, the court denies plaintiff's request for a preliminary injunction.

**IT IS THEREFORE ORDERED** that plaintiff's motion for a preliminary injunction (Doc. 2) is denied.

Dated this 21st day of July 2006, at Kansas City, Kansas.

        **s/ Carlos Murguia**
        **CARLOS MURGUIA**
        **United States District Judge**