**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **HODGDON POWDER COMPANY, INC.,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> ) <br> **ALLIANT TECHSYSTEMS, INC.,** ) <br> ) <br> **Defendant.** ) <br> ) | **CIVIL ACTION** <br><br> **No. 06-2100-CM** |

**MEMORANDUM AND ORDER**

Plaintiff brings this lawsuit against defendant for trademark infringement, trademark dilution, false designation of origin, and unfair competition. Defendant filed counterclaims, seeking to have plaintiff's trademark registrations canceled based on being generic, functionality, abandonment, and fraud. This matter is before the court on Defendant's Motion to Exclude Evidence of Plaintiff's Counsel's "Name Game" Survey and to Strike Plaintiff's Expert Witness Report (Doc. 42).

**I.     Factual Background**

Plaintiff Hodgdon Powder Company, Inc. and defendant Alliant Techsystems, Inc. are business competitors that supply gunpowder to the shooting sports industry. Plaintiff contends that defendant has infringed on the registered trademark for plaintiff's CLAYS gunpowder by introducing and marketing a new gunpowder, CLAY DOT. Plaintiff further contends that defendant is intentionally creating confusion between the two products to benefit from CLAYS's established reputation and customer base.

At a 2006 shooting event, the Grand American, Hodgdon employees conducted a survey at the direction of plaintiff's counsel. The survey, entitled "The Name Game Survey," asked

participants to identify which company makes which gunpowder; the survey listed six gunpowders, including CLAYS and CLAY DOT. There was a blank line after each gunpowder for the participant to write in the company name. The survey was distributed at plaintiff's promotional booth. While distributing the survey, the employees wore Hodgdon shirts and hats, and Hodgdon signs and promotional material were on display. After filling out the survey, the participants were entered into a drawing for eight pounds of gunpowder.

Plaintiff's expert, Dr. Raj Arora, filed an expert report in which he concludes that the survey shows that (1) "a large number of buyers are buying CLAY DOT gun powder under a false belief that it is manufactured by Hodgdon"; (2) this is a serious erosion of Hodgdon's Brand Equity; and (3) this is an unfair market advantage favoring defendant. Dr. Arora's conclusions are based on his marketing experience, library research, and the results of The Name Game Survey.

**II.    Legal Standard**

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under this rule, the court examines whether the expert is initially qualified to give the opinion proposed and whether the opinion expressed meets the requirements of *Daubert*, in that it "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc,* 509 U.S. 579, 591 (1993). This evaluation, commonly referred to as the court's "gatekeeping" function, extends not only to scientific testimony, but also to technical and other specialized

-2-

testimony. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

To determine reliability, the court uses the flexible *Daubert* test, which includes the following factors: "(1) whether the proffered technique can and has been tested; (2) whether the technique or theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a technique in the relevant community." *Sawyer v. S.W. Airlines Co.*, 243 F. Supp. 2d 1257, 1266 (D. Kan. 2003) (citing *Kumho Tire Co., Ltd.*, 526 U.S. at 149). The court may also consider other relevant factors, including an expert's qualifications, in determining reliability. *Id.* (citations omitted).

To determine relevancy, the court considers whether the expert's testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The court should admit testimony that is "[so] sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (quotation omitted). An expert may not, however, invade the province of the jury.

**III.    Discussion**

Defendant does not contest Dr. Arora's qualifications or analysis of the survey data. Instead, defendant argues that the survey is unreliable, and thus, Dr. Arora's expert opinion does not rest on a reliable foundation and is irrelevant to the task at hand. Generally, public recognition surveys may be used to establish a likelihood of confusion. *See Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 75 (10th Cir. 1958). Technical and methodological deficiencies in a survey usually relate to the weight to be given to the survey, not its admissibility. *Brunswick Corp. v. Sprint Reel Co.*, 832 F.2d 513, 523 (10th Cir. 1987). But, when the "deficiencies are so substantial as to render the survey's conclusions untrustworthy, a court should exclude the survey from evidence." *Winning Ways, Inc. v. Holloway Sportswear, Inc.*, 913 F. Supp. 1454, 1466 (D. Kan. 1996). *Daubert* underscores the trial

court's responsibility to ensure that survey evidence is both reliable and relevant. *Id.*

"A survey is trustworthy if it is shown to have been conducted according to generally accepted survey principles." *Cf. Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1544 (10th Cir. 1996) (analyzing a survey's trustworthiness as an exception to the hearsay rule). When determining reliability and trustworthiness of a survey, the court considers a variety of factors, including the following:

> 1. The universe was properly chosen and defined;
> 2. The sample chosen was representative of that universe;
> 3. The questions asked of the interviewees were framed in a clear, precise and nonleading manner;
> 4. Sound interview procedures were followed by competent interviewers who had no knowledge of the litigation or the purpose for which the survey was conducted;
> 5. The data gathered were accurately reported;
> 6. The data were analyzed in accordance with accepted statistical principles; and
> 7. Objectivity of the entire process was assured.

*Citizen Fin. Group, Inc. v. Citizens Nat'l Bank*, No. Civ.A. 01-1524, 2003 WL 24010950, at *1 (W.D. Pa. Apr. 23, 2003) (citing McCarthy on Trademarks and Unfair Competition, § 32:159 (4th Ed. 2003); 3A Callmann on Unfair Comp., Trademarks and Monopolies § 21:67 (4th Ed. 2001).

For the following reasons, the court finds that the survey was not conducted according to generally accepted survey principles. First, the survey universe is underinclusive. The survey participants are people who visited plaintiff's promotional booth at one shooting tournament—the 2006 Grand American. Only people who attended the tournament and were already familiar with plaintiff or were interested in learning more about plaintiff's products were surveyed. Second, the survey participants are not representative of the universe of prospective buyers because they were all familiar with plaintiff or in close proximity to plaintiff's promotional material. Other members of the relevant universe are unrepresented. Third, the survey question is not clear or precise. The survey

-4-

question, "Who makes these gunpowders?," is confusing.  It implies that the survey is asking about gunpowder manufacturers, but the "correct" answers include companies that only sell, not manufacture, gunpowder.  The phrasing of the question could have skewed the results.

Finally, the survey process was not objective.  The survey was designed by plaintiff's counsel.  Nothing in the record suggests that plaintiff's counsel has any experience with designing or conducting market surveys.  Plaintiff's employees conducted the survey while they were wearing shirts and hats with plaintiff's logo.  The survey was taken at plaintiff's promotional booth, which had large signs with plaintiff's logo and other promotional material on display.  The participants were given free samples of plaintiff's gunpowder and a chance to win eight pounds of gunpowder.  Additionally, a biased method was used for the selection of participants—only people familiar with plaintiff were surveyed.  *See, e.g.,Winning Ways*, 913 F. Supp. at 1469 (recognizing that when every survey participant has been previously exposed to a trademark, the results of the survey may reflect the familiarity with the previously exposed trademark, not the overall look of the competing products).

After reviewing the record, the court finds that the Name Game Survey is untrustworthy and inadmissible.  Because Dr. Arora's expert opinions and report rely on the untrustworthy survey, they do not meet the standards of Federal Rule of Evidence 702 or *Daubert* and are inadmissible.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Exclude Evidence of Plaintiff's Counsel's "Name Game" Survey and to Strike Plaintiff's Expert Witness Report (Doc. 42) is granted.

Dated this 20th day of July, 2007, at Kansas City, Kansas.

                                          **s/ Carlos Murguia**
                                          **CARLOS MURGUIA**

**United States District Judge**