## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **HODGDON POWDER COMPANY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 06-2100-CM** |
| | ) | |
| **ALLIANT TECHSYSTEMS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiff brings this lawsuit against defendant for trademark infringement, trademark dilution, false designation of origin, and unfair competition. Defendant filed counterclaims, seeking to have plaintiff's trademark registrations canceled based on being generic, functionality, abandonment, and fraud. This matter is before the court on Plaintiff's Motion for Summary Judgment (Doc. 52) and Defendant's Motion for Summary Judgment (Doc. 54).

**I.      Factual Background**[1]

Plaintiff Hodgdon Powder Company, Inc. and defendant Alliant Techsystems, Inc. are business competitors that supply reloading gunpowder to the shooting sports industry. The primary market for most shotgun reloading powders is "clay" target shooters. These target shooters shoot at flying round orange clay targets as part of the sports of Trap, Skeet, or Sporting Clays.

Plaintiff has several registered trademarks for its gunpowders that have "clays" in the title—CLAYS, INTERNATIONAL CLAYS, and UNIVERSAL CLAYS. Plaintiff introduced

---

[1]  The court has combined the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.

CLAYS in the early 1990s.  CLAYS is a shotgun gunpowder designed for target shooters and named to appeal to plaintiff's target audience—clay target shooters.  The CLAYS product label includes a pair of orange clay targets in flight superimposed on the word CLAYS.  Plaintiff's name is displayed at the top of the label.



On January 26, 1993, plaintiff registered the trademark CLAYS with the U.S. Patent and Trademark Office ("PTO").  During the registration process, the PTO required plaintiff to "indicate whether Clays has any significance in the relevant trade, any geographical significance or any meaning in a foreign language."  (Def.'s Br. Ex. 38.)  Plaintiff responded to the PTO stating that "[s]o far as trade relevant to gun powder is concerned, there is the shooting sport know (sic) as 'shooting clays' which involves using clay pigeons (clay discs) as the target.  This is the only use of 'CLAYS' currently known to applicant in this field."  (*Id*.)  Thomas Shepherd, plaintiff's president, filed an affidavit swearing that plaintiff did not intend to mislead the Trademark Examiner when it registered the CLAYS trademark.   Plaintiff has continued to use the trademark and has no intention

of discontinuing its use.

In 2005, defendant introduced a new shotgun powder specifically designed for clay target shooters.  According to his declaration, Jeffrey Bandel, defendant's former Program Manager, named the powder CLAY DOT.  Mr. Bandel named the powder after defendant's "DOT" series of reloading powders—RED DOT, GREEN DOT, and BLUE DOT.  He also states that defendant did not choose the name to create confusion with CLAYS.  According to Mr. Bandel's affidavit, defendant obtained a legal opinion from its counsel that CLAY DOT did not infringe on any trademarked name.  Defendant registered the mark on the PTO's Principal Register.  The CLAY DOT label shows an orange clay target superimposed on the words CLAY DOT.  Defendant's name is displayed at the top of the label.



Plaintiff has received several inquiries about defendant's CLAY DOT powder from people apparently confusing which company sells which gunpowder.  The words "clay" and "clays" and

pictures of clay targets are frequently used in the shooting sports industry.[2]  Plaintiff was aware of

defendant's use of CLAY DOT in August 2005 and filed this lawsuit in March 2006.

## II.      Standards for Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine

issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ.

P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences

therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144

F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986)).

## III.     Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on each of plaintiff's claims—trademark

infringement, false designation of origin, trademark dilution, and unfair competition.

### A.      Trademark Infringement

To prevail on its trademark infringement claim, plaintiff must establish that (1) it has a valid

and protected trademark; (2) defendant used a similar mark in commerce; and (3) defendant's use of

the mark is likely to cause confusion.  *Health Care and Ret. Corp. of Am. v. Heartland Home Care,*

*Inc.*, 396 F. Supp. 2d 1262, 1266 (D. Kan. 2005) (citing *Team Tires Plus. Ltd. v. Tires Plus, Inc.*,

394 F.3d 831, 832–33 (10th Cir. 2005)).  "The key inquiry in a trademark infringement case is the

likelihood of confusion between two similar marks."  *Team Tires Plus, Ltd.*, 394 F.3d at 832–33.

When determining the likelihood of consumer confusion, the court considers the following factors:

---

[2]  Plaintiff argues that defendant's exhibit showing various uses of the words "clay" and "clays" and pictures of clay targets, Exhibit 31, is hearsay.  The court disagrees.  The Exhibit is not being offered to prove the truth of the matter asserted.  For example, Ex. 31(D) is not being offered to prove that the 2006 Maryland State Sporting Clays Championship actually took place on July 8 & 9, 2006.

> (1) the degree of similarity between the marks; (2) the intent of the
> alleged infringer in adopting its mark; (3) evidence of actual confusion;
> (4) the relation in use and the manner of marketing between the goods or
> services marketed by the competing parties; (5) the degree of care likely
> to be exercised by purchasers; and (6) the strength or weakness of the
> marks.

*Id.*  No single factor is determinative; they must all be considered together.  At all times, the court's

focus is whether the similarity of the marks is likely to deceive or confuse the consumer.  *Id.*

Likelihood of confusion is a question of fact, but it is amenable to summary judgement in

appropriate cases.  *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th

Cir. 1999) (quotations omitted).

Plaintiff argues that defendant is not entitled to summary judgment because the CLAYS

mark is incontestable under 15 U.S.C. § 1065.  When a mark reaches incontestable status, "its

registration becomes 'conclusive evidence of the validity of the registered mark and of the

registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive

right to use the registered mark in commerce.'"  *Golf Warehouse, L.L.C. v. Golfer's Warehouse,*

*Inc.*, 142 F. Supp. 2d 1307, 1309 (D. Kan. 2001) (quoting 15 U.S.C. § 1115(b)).  Notwithstanding

the mark's incontestable status, "[t]he party alleging infringement has the burden of proving

likelihood of confusion."  *Universal Money Ctrs., Inc. v. Am. Tel.  & Tel. Co.*, 22 F.3d 1527, 1530

(10th Cir. 1994) (quotations omitted).  Because the CLAYS mark is incontestable, it is presumed to

have a secondary meaning that identifies the source of the product to consumers.  *Beer Nuts, Inc. v.*

*Clover Club Foods Co.*, 805 F.2d 920, 924 (10th Cir. 1986).  Thus, the inquiry is whether CLAY

DOT is likely to cause confusion in the market place as to the source of the products.

### 1.      *Degree of Similarity Between the Marks*

The degree of similarity is measured by the sight, sound, and meaning of the marks.  *First*

*Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 653 (10th Cir. 1996).  These factors are examined "in the context of the marks as a whole as they are encountered by consumers in the marketplace." *King of the Mountain Sports*, 185 F.3d at 1090.  The marks are not compared side-by-side; instead, the inquiry is whether the alleged infringing mark will be confusing to the public when singularly presented.  *Id.*  The similarities of the marks are given more weight than the differences. *Id.*

The product labels have visual distinctions.  The CLAYS product label has a light background and includes a pair of orange shotgun targets superimposed on the word CLAYS.  The CLAY DOT label has a dark background and displays an orange shotgun target superimposed on the words CLAY DOT.  Each label displays the company name at the top of the label.  The pronunciation of CLAYS versus CLAY DOT also has distinctions.  CLAY DOT is singular and contains an additional word.  But the marks have similarities.  Both labels picture orange clay targets.  And both use the term "clay" to refer to a clay target.  Both parties use the term clay to convey similar meanings—that the gunpowder can be used for clay target shooting.  A reasonable fact-finder may determine that the mark's similarities create consumer confusion.  *See, e.g., Beer Nuts, Inc.*, 805 F.2d at 926 (finding that BREW NUTS and BEER NUTS were confusingly similar and conveyed the same meaning).  This factor weighs in favor of likelihood of confusion.

### 2.    *Intent of the Alleged Infringer in Adopting its Mark*

"Proof that a defendant chose a mark with the intent of copying the plaintiff's mark may, standing alone, justify an inference of likelihood of confusion." *Sally Beauty Co. Inc. v. Beautyco, Inc.*, 304 F.3d 964, 973 (10th Cir. 2002).  "Conversely, if the evidence indicates a defendant did not intend to derive benefit from a plaintiff's existing mark, this factor weighs against the likelihood of confusion." *Heartsprings, Inc. v. Hartspring, Inc.*, 143 F.3d 550, 556 (10th Cir. 1998).  When

determining defendant's intent, the proper focus is whether defendant intended to derive a benefit from plaintiff's reputation or goodwill. *King of the Mountain Sports*, 185 F.3d at 1090.

Defendant selected the product name CLAY DOT as a continuation of its DOT gunpowder line. "Clay" corresponds to the orange color of the clay targets. "Dot" is consistent with defendant's other gunpowders: RED DOT, BLUE DOT and GREEN DOT. Nothing in the record suggests that defendant chose CLAY DOT with the intent to infringe on plaintiff's CLAYS mark. In fact, prior to adopting CLAY DOT, defendant sought legal advice regarding potential infringement. Based on the record, it does not appear that defendant adopted CLAY DOT with the intent to infringe upon the CLAYS mark. This factor weighs against likelihood of confusion.

### 3.    *Actual Confusion*

Evidence of actual confusion is not necessary, but may be the best indication of likelihood of confusion. *Sally Beauty Co.*, 304 F.3d at 974. Although the record contains evidence of confused consumers, it is not conclusive. There is a genuine question of fact as to whether there has been actual consumer confusion.

### 4.    *Relation in Use and the Manner of Marketing Between the Goods or Services*

The court next considers the similarities in the use and marketing of the gunpowders. "Typically, '[t]he greater the similarity between the products and services, the greater the likelihood of confusion.'" *King of the Mountain Sports*, 185 F.3d at 1092 (quoting *Universal Money Ctrs.,* 22 F.3d at 1532). In this case, the products are used and marketed in a similar manner. The gunpowders are similar and sold to the same group of consumers—clay target shooters. Defendant argues that there are differences in the way the products are marketed because defendant's canisters cannot be displayed at retail stores pursuant to the national fire regulations, which means only

plaintiff's product is on the display shelf. Plaintiff argues that the fire regulations are local regulations, and thus, the gunpowders may be displayed near each other in some retail stores. Even if defendant's gunpowder is not on display at some retail stores, this is a minor difference in the manner of marketing. The similarities in the use and marketing of the gunpowders weigh in favor of likelihood of confusion.

### 5.    Degree of Care Likely to Be Exercised by Purchasers

Defendant contends that consumers are likely to use a high degree of care when purchasing these products because they are using the products to reload their ammunition. Plaintiff argues that consumers do not exercise care in purchasing a reloading powder because the two powders are interchangeable. By its vary nature, reloading ammunition can be dangerous. Most consumers are likely to take great care in making sure they have the proper gunpowder to make their ammunition. The court finds that this factor weighs against likelihood of confusion.

### 6.    Strength or Weakness of the Marks

"The stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion." *Sally Beauty Co.*, 304 F.3d at 975. When assessing the relative strength of a mark, the court must consider two different aspects of strength—conceptual strength and commercial strength. *King of the Mountain Sports*, 185 F.3d at 1093. Conceptual strength is the mark's placement among the distinctiveness spectrum, whether the mark is fanciful, arbitrary, suggestive, descriptive, or generic. Commercial strength is the marketplace's recognition value of the mark. *Id.*

"Categorization of a mark along the conceptual strength spectrum generally is an issue of fact." *Big Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc.*, 402 F. Supp. 2d 1312, 1336 (D. Kan. 2005). As explained below, there is a genuine question of fact regarding CLAYS conceptual strength—whether it has become generic. In terms of commercial strength, a strong mark is one that

is rarely used by anyone other than the owner of the mark; a weak mark is one that is often used by other parties. *First Sav. Bank, F.S.B.*, 101 F.3d at 653–54. When determining commercial strength, the court considers the number of identical or more or less similar marks already in use on different kinds of goods, not just gunpowders. *Id.* The word "clay" and pictures of clay targets are used on other products in the shooting sport industry to refer to the clay shooting targets, which makes the mark's commercial strength relatively weak.

### 7.    *Balancing of the Likelihood of Confusion Factors*

After considering all of the factors relevant to the likelihood of confusion analysis, the court concludes that a rational trier of fact could find that consumers are likely to be deceived or confused by the similarity of the marks. Accordingly, defendant's motion for summary judgment on plaintiff's trademark infringement claim is denied.

### B.    **False Designation of Origin**

Plaintiff brings its false designation of origin claim under 15 U.S.C. § 1125(a) based on trade dress. Trade dress is the product's "overall image and appearance, and may include features such as size, shape, color, or color combinations, texture, graphics, and even particular sales techniques." *Sally Beauty Co., Inc.*, 304 F.3d at 977. To establish trade dress infringement, plaintiff must establish (1) that the trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) that there is likelihood of confusion; and (3) that the trade dress is not functional. *Id.*

The factors underlying the likelihood of confusion analysis for this claim are the same factors the court analyzed in plaintiff's trademark infringement claim above. *Id.* at 979. The parties rely on the same arguments for both likelihood of confusion analyses. For the reasons explained above, the court finds that there is a genuine question of material fact regarding whether there is a likelihood of

confusion between the parties trade dress and denies defendant's motion for summary judgment on plaintiff's trade dress claim.

### C.    Trademark Dilution

To prevail on its trademark dilution claim, "plaintiff must show that (1) it owns a 'famous' mark and (2) defendant['s] use has or will cause dilution."  *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 968 F. Supp. 568, 577 (D. Colo. 1997).[3]  When determining whether a mark is famous, the court considers the following non-exhaustive factors:

> (A) the degree of inherent or acquired distinctiveness of the mark;
>
> (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
>
> (C) the duration and extent of advertising and publicity of the mark;
>
> (D) the geographical extent of the trading area in which the mark is used;
>
> (E) the channels of trade for the goods or services with which the mark is used;
>
> (F) the degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought; and
>
> (G) the nature and extent of use of the same or similar marks by third parties.

*Id.*  "[T]o be famous, a mark must clearly be more than just distinctive in a trademark sense."  *Id.*

Plaintiff argues that its mark is famous in the relevant niche because it is conclusively presumed to be distinctive—because it is incontestable—and that distinctiveness is a synonym for fame.  But "[s]ection 1125(c) does not use 'famous' and 'distinctive' interchangeably."  *Id.* at 578.  Being distinctive in a narrow market is insufficient.  *Id.* (holding that a certain distinctiveness in the

---

[3]  The parties agree that the Trademark Dilution Revision Act ("TDRA") does not apply to plaintiff's claims.  The parties, and the court, rely on the law prior to the TDRA.

-10-

narrow market of hunting apparel is insufficient to show that the mark is famous under § 1125(c).

Here, plaintiff has presented no evidence demonstrating the level of public recognition of its mark or

that it is famous outside of the narrow gunpowder market.  The court finds that plaintiff has failed to

meet its burden to establish a genuine issue of material fact regarding whether its mark is famous.

Defendant's motion is granted; plaintiff's trademark dilution claim is dismissed.

### D.    Unfair Competition

In the pretrial order, plaintiff's unfair competition claim appears to include claims relating to

reloading data and trade secrets.  In its response to defendant's motion, plaintiff acknowledges that it

has not pleaded a cause of action regarding reloading data or trade secrets and limits its unfair

competition claim to mirror its federal trademark infringement claim.  *Scholfield Auto Plaza, L.L.C.*

*v. Carganza, Inc.*, 979 P.2d 144, 148 (Kan. Ct. App. 1999) (recognizing that "to prevail under either

theory, plaintiff must prove (1) it owns a valid, protectable []mark and (2) defendant's [mark] is so

similar to plaintiff's it is likely to cause consumer confusion.").  As discussed above, there is a

genuine issue of material fact regarding whether defendant's mark is likely to cause consumer

confusion.  The court, therefore, denies defendant's motion to dismiss plaintiff's unfair competition

claim.

## IV.    Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on defendant's four counterclaims—trademark

cancellation based on being generic, functionality, abandonment, and fraud—and several of

defendant's affirmative defenses—waiver, laches, and estoppel; acquiescence; unclean hands; and

no likelihood of confusion.[4]

---

[4]  The other affirmative defenses duplicate defendant's counterclaims and are considered as
(continued...)

**A.**     **Trademark Cancellation Counterclaims**

*1.*     *Generic Trademark*

Generic terms are ineligible for protection "because '[t]he public has an inherent right to call a product or service by its generic name.'" *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004) (quoting *U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 522 (4th Cir. 2002)).  Defendant, as the party seeking cancellation, bears the burden of proving that the mark has become generic.  *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 545 (10th Cir. 2000).  "A mark is generic if it is a common description of products [or services] and refers to the genus of which the particular product [or service] is a species."  *Donchez*, 392 F.3d at 1216.  Whether a mark is generic is a question of fact.  *Id.*  The fact-finder must determine the perception of the purchasing public—would the purchasers think that the mark was generic.  *Id.*  "Evidence of the public's understanding may come from direct testimony of purchasers, consumer surveys, dictionary listings, newspapers and other publications."  *Creative Gifts, Inc.*, 235 F.3d at 544.  Defendant can only carry its burden "by showing that the public understands the mark to signify the class of goods or services of which the trademarked product or service is a part."  *Id.*

Plaintiff argues that defendant cannot meet its burden because it has provided no evidence that CLAYS has become generic.  Defendant argues that CLAYS is generic because it refers to a central aspect or purpose of the gunpowder—to shoot clay pigeons.  Defendant relies on the Merriam-Webster Online Dictionary, which has "clay pigeon" as an entry under "clay" and defines "clay pigeon" as a  "target . . . thrown from a trap in skeet and trap shooting."  Defendant further relies on testimony from plaintiff's employees that indicates they believe CLAYS is a good name for

---

[4] (...continued)
part of the counterclaims.

-12-

plaintiff's gunpowder because it describes the purpose of the powder—to shoot clay targets.

After reviewing the record, the court finds that a reasonable fact-finder may conclude that CLAYS has become generic.  Thus, there is a genuine question of material fact that must be determined by the fact-finder.  Plaintiff's motion regarding this claim is denied.

### 2.     Functionality

Defendant's functionality claim relates to the CLAYS trademark and trade dress.  Plaintiff moves for summary judgment only on defendant's claim relating to functionality of trade dress, not the functionality of the CLAYS trademark.  As discussed above, in a trade dress claim, plaintiff bears the burden to show that the trade dress is non-functional.  *Sally Beauty Co., Inc.*, 304 F.3d at 977.  In its motion, plaintiff argues that defendant has not provided evidence that the trade dress is functional, but plaintiff has not presented evidence to establish that its trade dress is non-functional. Therefore, plaintiff has not met its burden, and the court denies plaintiff's motion regarding the functionality of its trade dress.

### 3.     Abandonment[5]

Abandonment under the Lanham Act occurs when (1) the owner of the mark ceases to use the mark with an intent not to resume such use or (2) any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark. 15 U.S.C. § 1127; *see also The Planing Mill, L.L.C. v. Hays Planing Mill, Inc.*, No. Civ. 05-1051-WEB, 2005 WL 1319144, at *6 (D. Kan. June 2, 2005).  Defendant does not argue, and the

---

[5]  In its motion, plaintiff indicated it was moving for summary judgment against defendant's waiver defense, but plaintiff did not address waiver.  Because plaintiff did not address waiver, the court has not considered the issue, and plaintiff is not entitled to summary judgment on the issue.

record does not support, that plaintiff ceased using the mark.  Instead, defendant argues the court should find that plaintiff abandoned its trademark because the trademark has become generic.  As discussed above, there is a genuine issue of material fact regarding whether the CLAYS mark has become generic.  Plaintiff's motion is denied with respect to defendant's abandonment claim.

### 4.    Fraud

To prevail on its claim of fraud in the procurement of a federal trademark, defendant must prove the following:

> (1) the false representation regarding a material fact [or a failure to disclose a material fact]; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance.

*Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 874 (10th Cir. 1995) (quoting *San Juan Prods., Inc. v. San Juan Pools*, 849 F.2d 468, 473 (10th Cir. 1988)); *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877 (8th Cir. 1994) (recognizing an applicant for a trademark owes a duty of candor and cannot withhold material information).  "'[T]he burden of proving fraudulent procurement of a registration is heavy.  Any deliberate attempt to mislead the Patent Office must be established by clear and convincing evidence.'"  *Id.*  (quoting *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 942 (10th Cir. 1983).

Defendant bases its fraud claim on plaintiff's failure to disclose the widespread generic use of the terms "clay" and "clays" within the shooting sports industry to the PTO.  Plaintiff argues it is entitled to summary judgment because defendant cannot establish that plaintiff withheld this material information from the PTO or that plaintiff induced any action by the PTO.  The court will first consider whether defendant can show that plaintiff intentionally mislead the PTO.

Defendant argues that plaintiff intended to mislead the PTO because plaintiff was aware that

-14-

others in the shooting sports industry use the term "clay."  But nothing in the record indicates that plaintiff intentionally mislead the PTO.  During the registration process, the PTO required plaintiff to indicate whether "clays" has any significance in the relevant trade.  Plaintiff responded to the PTO stating that "[s]o far as trade relevant to gun powder is concerned, there is the shooting sport know (sic) as 'shooting clays' which involves using clay pigeons (clay discs) as the target.  This is the only use of 'CLAYS' currently known to applicant in this field."  Plaintiff disclosed the clays reference to sporting clays.  Furthermore, in his affidavit, Mr. Shepherd testifies that plaintiff had no intention to mislead the Trademark Examiner.  Defendant presented no evidence to the contrary. The court, therefore, finds that defendant failed to establish the existence of an element essential to its claim.  Plaintiff's motion is granted; defendant's fraud claim is dismissed.

### B.    Affirmative Defenses

"Laches consists of two elements: (1) inexcusable delay in instituting suit; and (2) resulting prejudice to defendant from such delay. " *Brunswick Corp. v. Sprint Reel Co.*, 832 F.2d 513, 523 (10th Cir. 1987).  Plaintiff argues that defendant cannot prevail on this defense because a delay of less than one year does not constitute inexcusable delay as a matter of law.  To support its argument, plaintiff relies on *Brunswick Corp.  Brunswick Corp.*, however, holds that a "delay of one year does not *necessarily* constitute laches." *Id.* (emphasis supplied).  Plaintiff does not offer any other support for its motion, and therefore, fails to meet its burden.  Plaintiff's motion is denied on this issue.

Acquiescence denotes active consent to use of a trademark.  *Health Care and Ret. Corp. of Am.*, 396 F. Supp. 2d at 1268 n.6.  It has three elements: (1) the senior user actively represented that it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused undue prejudice to defendant. *Id.*  As

explained above, plaintiff has not shown that its seven month delay was excusable as a matter of law. A fact-finder could reasonably conclude that the delay was inexcusable. Thus, the court finds that there is a genuine issue of material fact regarding this defense. Plaintiff's motion is denied.

Whether there is a likelihood of confusion is an element plaintiff must establish to prevail on its trademark infringement and false designation of origin claims. One of defendant's defenses is that plaintiff cannot establish this element, but this defense is not an affirmative defense to which defendant bears the burden of proof. Plaintiff's argument that it is entitled to summary judgment on this issue because defendant has not presented evidence of no likelihood of confusion is without merit. Plaintiff's motion is denied with respect to this issue.

Plaintiff argues that it is entitled to summary judgment on defendant's remaining affirmative defenses—unclean hands, estoppel, and lack of distinctiveness—because the CLAYS mark is incontestable pursuant to 15 U.S.C. § 1065. Defendant does not dispute that the CLAYS trademark is incontestable, but points out that the trade dress is not incontestable because it is not registered. Because the trade dress is not incontestable, plaintiff's argument is inapplicable to those claims. The court will only consider whether these affirmative defenses are applicable to plaintiff's trademark claims, not plaintiff's trade dress claims.

Under 15 U.S.C. § 1015, an incontestable mark is subject to equitable defenses, "including laches, estoppel, and acquiescence." Because the affirmative defenses of unclean hands and estoppel, are equitable in nature, they are not barred by 15 U.S.C. § 1115(b). 15 U.S.C. § 1115 does not specifically provide for the lack of distinctiveness defense once a trademark has reached incontestable status. Defendant has provided no authority for its position that the defense is valid against an incontestable trademark, and the court has found none. Thus, defendant's lack of distinctiveness defense cannot be asserted against plaintiff's incontestable CLAYS trademark. It

-16-

may, however, be asserted with respect to plaintiff's trade dress claim because the trade dress is not incontestable.  Plaintiff's motion relating to the incontestable CLAYS trademark is denied with respect to the unclean hands and estoppel defenses and granted with respect to the lack of distinctiveness defense.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 52) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 54) is granted in part and denied in part.

Dated this 20th day of July 2007, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**

-17-