IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **HODGDON POWDER COMPANY, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | No. 06-2100-CM |
| ) | |
| **ALLIANT TECHSYSTEMS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff Hodgdon Powder Company, Inc. and defendant Alliant Techsystems, Inc. are business competitors that supply gunpowder to the shooting sports industry. The court held a jury trial in this case in the fall of 2007. The jury returned a verdict in favor of defendant on plaintiff's trademark infringement and unfair competition claims and defendant's affirmative defense that plaintiff's mark was generic. The jury also returned a verdict in favor of plaintiff on defendant's remaining affirmative defenses—functionality, waiver, and abandonment. This matter is before the court on plaintiff's Amended Motion for New Trial and Judgment as a Matter of Law (Doc. 129).

**I.   Standards for Judgment**

Motions for a new trial are committed to the sound discretion of the trial court. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993). A new trial may be granted in an action in which there has been a trial by jury "for any reason for which a new trial has hereforto been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). In reviewing a motion for new trial, the court must view the evidence in the light most favorable to the prevailing party. *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th

Cir. 1999). "The party seeking to set aside a jury verdict must demonstrate trial error which constitutes prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983).

Judgment as a matter of law should be "cautiously and sparingly granted." *Black v. M & W Gear Co.*, 269 F.3d 1220, 1238 (10th Cir. 2001) (quoting *Weese v. Schuckman*, 98 F.3d 542, 547 (10th Cir. 1996)). Granting such a motion is appropriate only if the evidence, viewed in a light most favorable to the nonmoving party, "points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Sanjuan v. IBP, Inc.*, 275 F.3d 1290, 1293 (10th Cir. 2002) (quotation omitted); *see also Freeman v. Gerber Prods. Co.*, 506 F. Supp. 2d 529, 534–35 (D. Kan. 2007). The court does not weigh the evidence, pass on the credibility of the witnesses, or substitute its conclusions for those of the jury. *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1241 (10th Cir. 2001) (quotation omitted). However, judgment as a matter of law must be entered if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. *Roberts v. Progressive Independence, Inc.*, 183 F.3d 1215, 1219–20 (10th Cir. 1999) (citing *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir. 1996)).

## II. Discussion

### A. *New Trial*

Plaintiff seeks a new trial, alleging that it was prejudiced because an admitted exhibit was "swapped" for evidence that was not admitted at trial and submitted to the jury for deliberations. "The Tenth Circuit has 'developed two different standards . . . to assess the impact of exposure to extraneous material on a jury.'" *United States v. Muessig*, 427 F.3d 856, 865 (10th Cir. 2005) (citing *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1241 (10th Cir. 2000)). Under one standard, a new trial is appropriate if there is the "slightest possibility" that exposure to the extraneous, non-admitted evidence affected the jury's verdict. *Smith,* 214 F.3d at 1241. Under the other standard, "jury exposure to

extraneous information creates a 'presumption of prejudice' which may be rebutted by a showing that the exposure was harmless." *Muessig*, 427 F.3d at 865. The difference between the two standards lies in which party has the initial burden of proof. *Id*. Under either standard, the court must evaluate the "possibility of prejudice by 'reviewing the entire record, analyzing the substance of the extrinsic evidence, and comparing it to that information of which the jurors were properly aware.'" *Smith*, 214 F.3d at 1242. The court need not consider which standard the Tenth Circuit may adopt because the result is the same under either standard.[1]

After the court announced the verdict and dismissed the jury, the parties discovered that Exhibit 8A[2], which was not admitted into evidence, had been submitted to the jury for deliberations instead of Exhibit 8, which was admitted into evidence. Exhibit 8 is an empty box that defendant used to promote "CLAY DOT." Defendant gave identical promotional boxes to all shooters registered for the 2005 Grand American Trap Shoot. The following instructions are on the back of the box: "Bring this five pack to the Alliant Powder Booth and receive five free samples of Federal Premium Gold Metal Shells loaded with the new Clay Dot powder." As admitted into evidence, Exhibit 8 is an empty box without shotgun shells. It was folded flat during most of the trial, but folded upright during closing arguments. Exhibit 8A is an identical box, folded upright, but it contains five empty shotgun shells labeled "CLAY DOT." Plaintiff offered Exhibit 8 as evidence of actual confusion, asserting that at the 2005 Grand American Trap Shoot potential consumers believed that the box was an offer for plaintiff's gunpowder, CLAYS.

---

[1] Neither party acknowledges that the Tenth Circuit has two different standards and that it has not resolved the issue of which standard applies. Instead, each party disingenuously cites Tenth Circuit precedent, presenting only the portions that lessen its burden. The court reminds counsel that this court has adopted the *Kansas Rules of Professional Conduct.* D. Kan. Rule 83.6.1(a). Rule 3.3 of the *Kansas Rules* requires that attorneys exhibit candor toward the court at all times.

[2] Exhibit 8A was marked after the verdict.

Prior to jury deliberations, the parties certified that "all exhibits admitted into evidence during trial have been accounted for and given to the jury for their review and examination during deliberations." See Trial Exhibits (Doc. 117-5).  Neither party accepts responsibility for the mix-up—each party blames the other.  Which party was at fault is irrelevant and the court will not waste time pointing fingers or assigning blame.

Plaintiff argues that it was prejudiced because (1) the jury may have considered extraneous, non-admitted evidence, Exhibit 8A, and (2) the jury may have assumed Exhibit 8 was not in evidence because it was not submitted to them during deliberations.  The court will first consider the jury's exposure to the shotgun shells.  Plaintiff argues that it was prejudiced because (1) the shells were "never once mentioned during the entire trial"; (2) the shotgun shells have CLAY DOT printed on them, which was confusing because there was no evidence that defendant used the mark CLAY DOT on its shotgun shells—as opposed to its reloading powder; and (3) the shotgun shells were confusing because they were cut open and empty.  Defendant argues that the presence of the shotgun shells inside the box was not prejudicial or confusing because: (1) the printing on the box states that the five pack could be exchanged for sample shells loaded with the CLAY DOT gunpowder; (2) the box and five free shells were discussed at trial by both parties; and (3) a cut-open shell was displayed to the jury during trial.

For the following reasons the court finds that there is not even the "slightest possibility" that the shotgun shells affected the jury's verdict.  The court further finds that defendant has shown that plaintiff was not prejudiced by the presence of the shotgun shells in the jury room.  The shotgun shells were discussed at trial. Ron Reiber, plaintiff's product manager, testified that (1) people presented similar boxes at plaintiff's booth at the 2005 Grand American asking for free shotgun shells; (2) defendant introduced CLAY DOT in association with the box; (3) if you presented the box to defendant it would give you five shells that filled the box; and (4) the actual ammunition was loaded with CLAY DOT

powder.  Tom Bowen, plaintiff's corporate representative, testified that (1) people were trying to get five free shells with the box, not gunpowder and (2) that the box was not full of gunpowder, but the five shells that went in it were.  During Mr. Bowen's testimony, defense counsel displayed a cut-open shotgun shell taken from inside his copy of Exhibit 8.  Moreover, the directions on the back of the box state "5 FREE SAMPLE SHELLS," refer to the box as a "five pack," and say to bring it to defendant's booth to receive five free sample shells loaded with the new CLAY DOT gunpowder.  The presence of the shotgun shells was not confusing, because evidence of the shotgun shells was presented during trial.

The evidence at trial established that the shotgun shells in the box were a promotion for the CLAY DOT gunpowder.  Thus, having "CLAY DOT" printed on the side of the shells was not confusing and did not raise the issue of whether CLAY DOT was being used for shotgun shells or gunpowder.  Nor is the physical appearance of the shotgun shells—empty and cut open—prejudicial.  The shells displayed at trial were cut open, and the directions on the box imply that the box does not contain loaded shotgun shells, but must be exchanged at defendant's booth for shells with the new CLAY DOT powder.  Because the presence of the shotgun shells was explained by evidence and testimony admitted during trial, the court finds that their presence in the jury room was not prejudicial.

The court next considers whether plaintiff was prejudiced because Exhibit 8 was not given to the jury for deliberations.  The only differences between Exhibit 8A and Exhibit 8 are as follows: (1) Exhibit 8 has an exhibit sticker, identifying it as Plaintiff's Exhibit 8 and (2) Exhibit 8A contains the empty shotgun shells.  Because Exhibit 8A is an identical copy of Exhibit 8 and both were folded upright before the evidence was submitted to the jury, any references to Exhibit 8 during trial apply equally to Exhibit 8A.  Furthermore, there was testimony at trial that there were multiple, identical boxes.  The lack of an exhibit sticker did not prejudice plaintiff.  As explained above, the presence of the shotgun shells was not confusing to the jury or prejudicial to plaintiff.  Accordingly, the court finds that

the inadvertent mix-up between Exhibit 8 and Exhibit 8A did not affect the jury's verdict or prejudice plaintiff. After reviewing the record and comparing the extrinsic evidence to the evidence presented at trial, the court finds that plaintiff's motion for new trial is denied.

### B. *Judgment as a Matter of Law*

Plaintiff argues that it is entitled to judgment as a matter of law on defendant's counterclaim and affirmative defense that plaintiff's mark is generic. Plaintiff argues that (1) the evidence did not show that the word "clay" is generic for gunpowder; and (2) even if the term is generic for gunpowder, the evidence did not show that the term was generic in 1993 when plaintiff first registered its mark.

"A generic mark refers to a general class of goods, such as 'cola,' of which an individual product is a member." *Medi-Flex, Inc. v. Nice-Pak Prods., Inc.*, 422 F. Supp. 2d 1242, 1254 (D. Kan. 2006). The fact-finder must determine the perception of the purchasing public—whether purchasers would think that the mark was generic. *Id.* "Evidence of the public's understanding may come from direct testimony of purchasers, consumer surveys, dictionary listings, newspapers and other publications." *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 544 (10th Cir. 2000). The question before the court is whether sufficient evidence was presented at trial to support a finding that "the public understands the mark to signify the class of goods or services of which the trademarked product or service is a part." *Id.*

At trial, Thomas Shepherd, plaintiff's president, testified that (1) he selected the mark CLAYS to appeal to the target audience—clay target shooters—and (2) clay targets are sometimes called clays. Plaintiff's advertisement, plaintiff's exhibit 45, states that CLAYS was developed for 12 gauge clay target shooters. There was also evidence that CLAYS was designed for both the shotgun and handgun clay target industry. Plaintiff's Exhibit 36, plaintiff's data manual, describes CLAYS, stating that (1) "Clays has 'taken the clay target world by storm'"; (2) CLAYS is the most clean burning, consistent 12 gauge powder available; and (3) CLAYS's features transfer directly to handgun applications "where target shooting is the main goal." Based on the evidence presented at trial, a reasonable jury could find

that the term "clay" is generic in the relevant general class of goods—gunpowder for clay target shooters.

As for plaintiff's second argument—that the evidence must establish when the mark became generic—defendant argues that plaintiff waived this argument because plaintiff did not raise it in plaintiff's Rule 50 motion at the close of the evidence. A "renewed motion under Rule 50(b) cannot assert grounds for relief not asserted in the original motion." *Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 739 (10th Cir. 2007) (citing *McCardle v. Haddad,* 131 F.3d 43, 51 (2d Cir. 1997)). Plaintiff's post-trial motion is limited to those grounds that were specifically raised in its prior Rule 50 motion. *McCardle*, 131 F.3d at 51.

At the close of the evidence, plaintiff moved for judgment as a matter of law under Rule 50. In support of its motion on the issue of whether plaintiff's mark was generic, plaintiff's counsel said, "I believe that there is no evidence put on that the primary significance of the word clays is used to signify a generic name for goods, so I believe that their genericness argument should not—is not available to them." Plaintiff's counsel did not raise the issue of when the mark became generic during its pre-verdict motion for judgment as a matter of law. In fact, plaintiff did not raise the issue until its current motion. Accordingly, plaintiff has waived this argument. *See, e.g,. McCardle*, 131 F.3d at 51 ("[A] posttrial motion for [judgment as a matter of law] can properly be made only if, and to the extent that, such a motion specifying the same grounds was made prior to the submission of the case to the jury.").

After reviewing the evidence in a light most favorable to the nonmoving party, the court finds that there is a legally sufficient evidentiary basis for the jury's verdict. Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED** that Hodgdon Powder Company, Inc.'s Amended Motion for New Trial and Judgment as a Matter of Law (Doc. 129) is denied.

Dated this 18<u>th</u> day of July 2008, at Kansas City, Kansas.

                                                  s/ Carlos Murguia
                                                  **CARLOS MURGUIA**
                                                  **United States District Judge**